These ejectments came before the court by consent, for argument, on a case stated. On the 15th July 1745, John *313 George Countz conveyed by deed the premises in the declaration mentioned, containing 150 acres, “to Philip Morning- “ star (father of Juliana and Catharine two of the plaintiffs “ and of George the defendant) and his heirs begotten on his ‘ ‘ present wife Eve Morningstar forever, to have and to hold “the same to *the said Philip and his heirs born of his r*014 ‘1 present wife Eve forever, with covenant of warranty. ’ ’ L The question submitted to the court for their decision, was, whether the lands intailed by this deed, descend agreeably to the course of the common law per formam doni, or are to be distributed according to the acts of assembly regulating the estates of intestates. In case the court should be of the latter opinion, then judgments to be entered for the plaintiffs on the day in bank, if otherwise, for the defendant.
Eor the plaintiffs it was contended, that wherever the ancestor takes an estate of freehold, and an estate is limited either mediately or immediately to his heirs, they are to be deemed words of limitation and not of purchase. Shelly’s case, 1 Co. 104. a. This rule is unshaken; where the heir takes in the character of heir, he must take in the quality of heir. Jones v. Morgan, 1 Bro. Cha. Rep. 216. All heirs taking as heirs, must take by descent. Ib. 219. In England, the leading custom is that the eldest son shall inherit lands; but it is otherwise in Pennsylvania, where all the children, by the act of 1705, are put upon an equal footing, except that the eldest son takes a double share. The intestate act of 1705 is a general law of descents and distribution. Dali. 482. One co-heir shall have contribution against another co-heir, under our laws of descent. Ib. 484, 485. Our constitution and laws favour equality among the heirs, and distribution of estates. Ib. 178.
The children of an intestate take by descent, analogous to the heirs of gavelkind lands. Where lands of the nature of gavelkind are given to B and his heirs, he having issue divers sons, all his sons after his decease shall inherit. Co. Lit. 10. a. One seized of lands in gavelkind gives or devises the same to a man and his eldest heirs, he cannot hereby alter the customary inheritance, and the law rejecteth the adjective ‘ ‘ eldest. ’ ’ Ib. 27. a. b. All the issues shall inherit an estate tail in gavelkind lands. Weeks v. Carvel Noy 106. Upon recovery of lands in borough English, writ of error descends according to the lands. 1 Leon. 261. He who is special heir by the custom, as of borough English land, shall bring the writ of error, and not the heir at common law. 4 Leon. 5. 2 Bac. Abr. 195. A conveyance of gavelkind lands, obtained from persons uninformed of their rights was set aside, though there was no actual fraud or imposition. 2 Bro. Cha. Rep. 151. A having three sons, B, C and D, D died leaving a daughter E. ' A purchased lauds in borough English and died; adjudged they shall descend to E. 2 Lord Raym.-1024. *314 Each son takes an equal part of gavelkind lauds, *but the youngest son takes the whole of borough English lands. Ib. 1025. One seized of lands in borough English, made a feoffment to the use of himself and the heirs male of his body begotten, secundum cursttm communis legis, and held, that the youngest son shall have them by descent notwithstanding. Dy. 179. b. pi. 45. Heirs male of testator’s body may be meant as synonimous to issue male. Cowp. 314. In a provision for children by marriage settlements, all are entitled; for as there are no children in esse before marriage to whom it can be applied, it must mean all, and there is no place to draw the line in, nor any reason why it should be for one more than another. It 'is a parental provision made as a debt of nature, and therefore all are entitled. 1 Vez. 114. We are credibly informed, that a decision similar to what we contend for, has taken place in Connecticut, in the case of Chester v. Chester, and we further contend, that our construction supports the real intention of the conveyance, and the true spirit of the laws and constitution of this commonwealth. We have nothing further to do with the pride of family in the character of an elder son.
The counsel for the defendant were prepared to proceed in the argument, when they were told by the court that they would be saved that trouble.
The court observed that it was too late now to stir this point, whatever reason there might have been for it in the first instance. The invariable opinion of lawyers, since the act of 1705, has been, that lands intailed descended according to the course of the common law, and it has been understood generally, that it has been so adjudged in early times. All the common recoveries which have been suffered by the heirs of donees in tail, have been conformable to that principle; to unsettle so many titles at this late day, would be productive of endless confusion. As to gavelkind lands, it is observed by Mr. Hargrave, (Co. Lit. 10. a. note 3), that all the sons are as much heirs to such land, as the eldest son is heir to land descending according to the course of the common law. The custom of gavelkind extends to estates tail, and that too irresistibly, according to some authorities, and cites Dy. 179. b. Robins. Gavelk. 94. On this custom therefore alone, depend all the resolutions.
Ou-r act of 1705 only regulates the descent of lands amongst the children, where the father is seized thereof, and might dispose of them by deed or will. It leaves other cases of descent as they were at common law; and hence an elder brother succeeds to the estate of a younger brother, who dies intestate *0^-. unmarried *and of full age, in preference to his other I brothers and sisters. In the present case the lands are claimed under the grandfather per formam ioni, through the *316 father. We are clearly of opinion with the defendant; but if the plaintiff’s counsel wish to be further heard on the subject, they can have an opportunity when we sit in bank.
Cited in 9 S. & R., 354.
Referred to in 28 Pa., 105 ; 37 Pa., 18.
Obsolete since tbe Wills Act, of 1833.
Messrs. Hartley and Bowie pro qtier.
Messrs. Duncan, Montgomery and Campbell pro def.